UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALMA V., ) | |
| ) | |
| Plaintiff, ) | No. 21cv3363 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| KILILO KIJAKAZI, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alma V.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits. Plaintiff has filed a motion for summary judgment, seeking remand of the Commissioner's decision (dkt. 17). As detailed below, Plaintiff's motion for summary judgment (dkt. 17) is DENIED. The decision of the Commissioner is affirmed.

**I.    Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. Administrative Law Judges ("ALJs") are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R.

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

§ 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's residual functional capacity ("RFC") in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699. Further, while reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001.

**II.     The ALJ's Decision**

On March 15, 2019, Plaintiff protectively filed for disability insurance benefits, alleging disability beginning June 23, 2017. (Administrative Record ("R.") 28.) On December 28, 2020, an

Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled under the Social Security Act. (R. 28-39.)

At Step One of that decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 23, 2017 through her date last insured of December 31, 2019. (R. 31.) At Step Two, the ALJ found that Plaintiff had the severe impairments of Crohn's disease; status-post total proctocolectomy with ileostomy; parastomal hernia, status-post repair; partial small bowel obstruction, status-post surgery; stoma skin stenosis, status-post ileostomy revision; relocate ileostomy surgery; anxiety disorder; depressive disorder; and posttraumatic stress disorder ("PTSD"). *Id*. At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. *Id*. Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following exceptions: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, crawling, and balancing; avoidance of concentrated exposure to workplace hazards, including dangerous moving machinery and unprotected heights; no fast-paced production rate or strict quota requirements; and occasional interaction with coworkers, supervisors, and the general public. (R. 33.) At Step Four, the ALJ determined Plaintiff was able to perform her past relevant work as an import-export agent. (R. 37.) The ALJ also made an alternative Step Five finding that there were other jobs that existed in significant numbers in the national economy Plaintiff was capable of performing given her age, education, work experience, and RFC. *Id*. The ALJ did not, however, detail what these positions were. Because of these determinations, the ALJ found Plaintiff not disabled under the Act. (R. 38.)

Through the June 4, 2021 Appeals Council denial (R. 1), the decision of the Commissioner became final and reviewable by the District Court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981;

*Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Plaintiff, through counsel, filed the instant action on June 23, 2021, seeking review of the Commissioner's decision. (Dkt. 1.)

### III. Discussion

At the outset, the Court must note that a party is responsible for making its own case, and the Court will not scour the record to make arguments in support of Plaintiff's disability. *See*, *e.g.*, *Herrmann v. Astrue*, 2010 WL 356233, at *13 (N.D. Ill. Feb. 1, 2010) (citing *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1135 (7th Cir.1997)). Nonetheless, after some frustration parsing out the potential arguments Plaintiff makes in her brief and accompanying reply brief, the Court has distilled Plaintiff's arguments against the ALJ's decision into the following broad categories: (1) that the ALJ failed to adequately address her impairments; (2) that the ALJ improperly assessed her RFC; and (3) that the ALJ erred in evaluating her subjective complaints. However, the majority of the pages in Plaintiff's brief devoted to these broad arguments are a recitation of the law and/or the medical records with little attempt to tie them together. As detailed below, the Court does not find any of these to warrant reversal of the ALJ's decision.

### a. The ALJ Adequately Assessed Plaintiff's Impairments, Both Individually and in Combination

Plaintiff first argues the ALJ did not consider or improperly discounted several of her impairments, including hernias, abdominal pain, fatigue, nausea, obesity, and evidence of malnutrition and malabsorption. (Dkt. 17, pp. 5-6.)

As an initial matter, the ALJ did find Plaintiff's parastomal hernia, status-post repair, to be a severe impairment. (R. 31.) As to the remainder of the issues, although Plaintiff cites to various medical records that note these issues or symptoms, she failed to demonstrate these were severe impairments, or even medically determinable impairments. The existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities (*i.e.*, medical signs and laboratory findings). *See* 20 C.F.R. §§ 404.1520c, 404.1521,

4

404.1529; Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Anne M. v. Saul*, 2022 WL 683668 at *7 (N.D. Ill., March 8, 2022) ("it is not the ALJ's job to identify evidence showing that a condition was not present. It is plaintiff's burden to identify evidence showing the condition was present.") (signals and citations omitted). It is not enough for Plaintiff to have merely drawn the Court's attention to the existence of a record without discussing the import of the record; Plaintiff's argument is conclusory and undeveloped. As such, the Court must reject these arguments. *See*, *e.g.*, *Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) ("perfunctory and undeveloped" arguments deemed waived); *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that 'skeletal' arguments may be properly treated as waived, as may arguments made for the first time in reply briefs.") (citations omitted). The Court will not remand the ALJ's decision on this basis.

Plaintiff also argues the ALJ erred in his assessment of her Crohn's disease, asserting that her Crohn's disease and accompanying symptoms met Listing 5.06. (Dkt. 17, pp. 6-11.) The listings detail "impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a); *see also*, 20 C.F.R. § 404.1529(d)(3); *Craft v. Astrue,* 539 F.3d 668, 674 (7th Cir. 2008) ("[i]f a limitation is of listings-level severity, then the claimant is conclusively disabled."). It is the claimant's burden to not only present medical findings that match or equal a listing, but to show that her impairments satisfy all the various criteria specified in that listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). To meet a listing is a "very high bar." *Garza v. Kijakazi*, 2022 WL 378663, at *2 (7th Cir. Feb. 8, 2022).

Plaintiff again cites to numerous pieces of record evidence she believes supports her assertion

that she satisfies Listing 5.06. *Id*. Plaintiff also sets out the requirements of Listing 5.06. *Id*. However, she does not provide any argument that her impairment met the detailed criteria of the listing, as is her burden. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); 20 C.F.R. § 404.1520(a)(4)(iii). In contrast, the ALJ did just that. Specifically, the ALJ analyzed Plaintiff's Crohn's disease through the lens of Listing 5.06 as follows:

> The claimant has been diagnosed with Crohn's disease (also referred to at times as regional enteritis). As an inflammatory bowel disease, Crohn's disease is covered by listing 5.06. A preliminary requirement under that listing is that the disease must be documented by objective testing, via means such as endoscopy, biopsy, appropriate medical imaging, or operative findings. If it is so documented, there are two separate ways to go on to satisfy the listing. Under subsection A, the bowel disease must result in obstruction of stenotic areas requiring hospitalization. The claimant has not had such hospitalizations. Under the alternative subsection B requirements, the disease must result in two of six possible manifestations, occurring within the same consecutive six month period. Those manifestations involve anemia, reduced serum albumin, abdominal masses, perineal disease, weight loss, and the need for supplemental daily enteral nutrition, each of which has particular requirements of its own which are spelled out in the listing. Careful review of the evidence of record in this case fails to establish that at least two of those subsections are satisfied, nor are there alternate findings of equivalent medical significance.

After detailing how Plaintiff failed to meet each of the specific listing criteria, the ALJ determined that Listing 5.06 was not met. *Id*. The ALJ further noted that "the reports of [Plaintiff's] treating gastroenterology specialist and the diagnostic findings show [Plaintiff's] Crohn's disease has been inactive at all times relevant to this decision." *Id*. Thus, the ALJ's Step Three finding was supported by substantial evidence in the record, including the evidence the ALJ discussed in his decision. (R. 31.) The Court declines to remand the ALJ's decision on the basis of his consideration of Plaintiff's Crohn's disease.

Plaintiff also takes issue with the ALJ's consideration of her mental impairments at Step Three. (Dkt 17, pp. 11-13.) In order to meet the criteria of the listed mental impairments, a claimant must have a marked limitation of two, or an extreme limitation of one, of the four broad functional areas (the B criteria). Listing of Impairments, 20 C.F.R. Pt. 404, Sbpt. P, App. 1, Listings 12.04,

12.06, 12.15. At this step, the ALJ considered the four broad functional areas (the Paragraph B criteria) of Listings 12.04, 12.06, and 12.15 and concluded that Plaintiff had mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; mild limitation in concentration, persisting or maintaining pace; and no limitation in adapting or managing herself. (R. 32.) In making these conclusions, the ALJ discussed the prior administrative findings of state agency psychologists Lionel Hudspeth, Psy.D. and M.W. DiFonso, Psy.D. (R. 98-99, 108-09.) The ALJ explained that while Drs. Hudspeth and DiFonso found Plaintiff had no limitation in understanding, remembering, or applying information, he felt a mild limitation in this domain was more appropriate to accommodate any difficulties caused by pain or medication side effects. (R. 32.) This was similarly true in regards to interacting with others: the ALJ acknowledged that the state agency reviewing psychologists found a mild limitation in the area of interacting with others, but ALJ found a moderate limitation in that domain based on Plaintiff's reports of anger and irritability. *Id*. Regarding the remaining two domains – concentrating, persisting or maintaining pace; and adapting and managing herself – the ALJ also found mild limitation in the former and no limitation in the latter, consistent with the assessments of Drs. Hudspeth and DiFonso. *Id*.

As part of her argument against the ALJ's Step Three mental findings, Plaintiff also faults the ALJ for not considering evidence from treating psychiatrist Dr. Leonard Elkun, M.D., "who has been treating Plaintiff in 2021." (Dtk. 17, p. 11; Dkt. 19, p. 2.) As the Commissioner points out, the ALJ never had Dr. Elkin's records at the time of his December 28, 2020 decision. These records were only submitted to the Appeals Council after the ALJ's decision. (R. 8-13.) Therefore, the only purpose for which the Court can consider this additional evidence submitted after the ALJ's decision is to determine whether the case should be remanded to the agency pursuant to the sixth sentence of 42 U.S.C. § 405(g). *Diaz v. Chater*, 55 F.3d 300, 305 n.1 (7th Cir. 1995) (citing *Eads v. Sec'y of HHS*, 983 F.2d 815, 817 (7th Cir. 1993). Although Plaintiff does not request a sentence-six remand based

on this evidence, the Court may remand the case without ruling on the merits if the additional evidence is new and material, and if there was good cause for failure to incorporate the additional evidence into the record at the prior hearing. 42 U.S.C. § 405(g) (sentence six). "For sentence six purposes…'materiality' means that there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered, and 'new' means evidence 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (quoting *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (quoting *Sullivan v. Finkelstein*, 4967 U.S. 617, 727 (1990))). In toto, the Court finds the provided sound reasons supporting his Step Three mental impairment findings.

Dr. Elkun reported he began treating Plaintiff in January 2021. (R. 9.) Evidence of Plaintiff's condition in and after January 2021 would not have changed the ALJ's December 2020 decision because the ALJ only considered whether Plaintiff was disabled through her date last insured, December 31, 2019.[2] *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) ("Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement."); *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) ("[N]ew evidence is material only if it is relevant to the claimant's condition during the relevant time period encompassed by the disability application under review.") (signals and citations omitted). Because Dr. Elkun's notes post-date the applicable period, his records are not material and consideration of

---

[2] Plaintiff's reply brief pastes nearly wholesale the argument from her opening brief concerning Dr. Elkun's records, save for the sentence that "the ALJ and the Commissioner have not considered the opinions of [Plaintiff's] treating physician Dr. Elkum, that he opines go back to June 23, 2017." (Dkt. 19, p. 2.) Plaintiff provides no citation for this proposition (to say nothing of the fact it was improperly presented for the first time in her reply). After searching the record, the Court presumes this relates to the pre-filled-in date typed onto the form Dr. Elkun filled out on 3/19/2021 opining on Plaintiff's mental impairments. (R. 9-13 at 13.) The form Dr. Elkun completed indicates he began treating Plaintiff on 1/18/2021 and most recently had seen her on 3/4/2021, with a frequency of one visit every two weeks. *Id*. at 9. It appears, therefore, that Dr. Elkun might have seen Plaintiff on four occasions. The Court finds this extremely short duration of treatment, particularly without more explanation from Dr. Elkun, to be scant basis for him to opine that every mental impairment he details existed at the same severity for the five years prior to the date he began treating Plaintiff.

them does not warrant a sentence-six remand.

Next, Plaintiff alleges the ALJ committed reversible error by failing to consider the medical records and evidence of Plaintiff's other treating mental health professional, Dr. Gvozdjan Dragoslav M.D., whom Plaintiff saw for medication management. (Dkt. 18, pp. 12-13; R. 35, 773.) To the contrary, the ALJ did consider almost all of these notes. The specific pages cited by Plaintiff are contained in exhibits B5F, B8F, and B16F. (R. 1081-90.) In considering the Paragraph B criteria, the ALJ cited numerous pages from B5F and B8F, including notes from Dr. Gvozdjan. (R. 32.) Although the ALJ did not explicitly cite to exhibit B16F, it was not error because exhibit B16F is a duplicate of exhibit B8F, except for a single treatment note, from January 4, 2020. Thus, the only treatment note the ALJ did not explicitly recognize was the January 4, 2020 treatment note (R. 1082-85), which reflects Plaintiff's mental state after her December 31, 2019 date last insured. Moreover, the ALJ is not required to discuss every piece of evidence in the record. *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (ALJ "is not required to address every piece of evidence or testimony, but must provide some glimpse into her reasoning"). The Court will not reverse this matter on the basis of the ALJ's Step Three determination.

Plaintiff, in a one sentence argument, also faults the ALJ for failing to consider Plaintiff's statements that it was very difficult to communicate and participate in therapy over the phone since the start of COVID-19, but she went to therapy frequently prior to COVID-19, and that she did not like to share her problems or feelings much. (Dkt. 17, p. 13.) However, the ALJ reasonably relied on Plaintiff's testimony she had not seen a therapist in two to three years prior to the September 1, 2020 administrative hearing, which was well before the COVID-19 pandemic. (R. 34, 85.) The ALJ also discussed that Plaintiff reported some problems getting along with others, which is related to the idea Plaintiff did not like to share her problems or feelings much; ultimately the ALJ credited these difficulties in finding Plaintiff had a moderate limitation in interacting with others. (R. 32.) The Court

will not remand this matter based on the ALJ's Paragraph B analysis.

Finally, Plaintiff raises one additional issue in her reply brief, stating that "[n]either the Commissioner nor the ALJ discuss whether a combination of mild limitation and moderate limitations can equal the medical significance of two marked or one extreme limitation under Listings 12.4, 12.6 and/or 12.15…" (R. 19, pp. 3-4.) This is the entirety of the argument; Plaintiff makes no attempt to herself discuss whether this proposition is true, cite any records in support of this proposition, or point to any case law on this point in her favor. The Court rejects this argument as conclusory and undeveloped, and will not remand on this basis. *Horr*, 743 F. App'x at 20; *Hernandez*, 634 F.3d at 913.

  **b.**  **The ALJ Adequately Assessed Plaintiff's RFC**

Next, Plaintiff claims that the ALJ erred in formulating her RFC because he did not consider her need for frequent bathroom breaks. (Dkt. 17, pp. 13-14.) To the contrary, the ALJ discussed how Dr. Albert Olorvida, M.D., Plaintiff's primary care physician, indicated that Plaintiff needed a job that permitted ready access to a restroom at a frequency of three to five times per day. (R. 36, 210-15.) But Plaintiff also disputes the ALJ's assessment of Dr. Olorvida's opinion. (Dkt. 17, pp. 14-16.) However, the ALJ appropriately considered the record medical source opinions, including Dr. Orlovida's opinion. The ALJ recognized that Dr. Olorvida completed a questionnaire form and reported disabling functional limitations. (R. 36, 210-15.) The ALJ found Dr. Olorvida's opinion to have little persuasive value and explained the reasons for this finding. (R. 36.) The ALJ discussed how Dr. Olorvida's own treatment notes did not show the kind of physical findings that would indicate such significant limitations. *Id.*; *see* 20 C.F.R. § 404.1520c(c)(1)(2017) (the more supported a medical opinion, the more persuasive). For example, the ALJ recognized that Dr. Olorvida's physical examination findings were consistently within normal limits. (R. 36 (citing R. 1033, 1038, 1042, 1059).) The ALJ explained that Dr. Olorvida's opinion of such extreme limitations seemed to be

internally inconsistent with the doctor's assessment that Plaintiff's prognosis was good. (R. 36; *see* 20 C.F.R. § 404.1520c(c)(2)(2017) (the more consistent a medical opinion, the more persuasive). The ALJ elaborated that Dr. Olorvida's assessment that Plaintiff needed ready access to a restroom was inconsistent with the reports and diagnostic findings of the gastroenterology specialist showing Plaintiff's Crohn's disease to be inactive. (R. 34, 36-37 (citing R. 392, 937, 1123).) The ALJ also noted that the record did not contain any opinions from Plaintiff's gastroenterology specialists that supported Dr. Olorvida's opinion. (R. 37.) Because "[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record," there is no error in the ALJ's finding that Dr. Olorvida's opinion had little persuasive value. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (signals and citations omitted). Additionally, while Plaintiff faults the ALJ for failing to pose a hypothetical to the vocational expert ("VE") including any allowance for off-task time due to bathroom breaks, the Court notes that Plaintiff's counsel also failed to ask the ALJ about any such allowance. (R. 91.) The single question Plaintiff's counsel posed to the VE on redirect was concerning off-task time due to lying down. *Id*.

Similarly, because the ALJ found Dr. Olorvida's opinions generally unpersuasive, the Court finds no error in the fact the ALJ did not adopt his opinions on absenteeism in the RFC. Likewise, as the ALJ never had Dr. Elkun's records, they also cannot provide a basis for reversible error with respect to his opinions on absenteeism. The ALJ was not required to adopt these opinions when formulating the RFC.

In light of the foregoing, the ALJ weighed the medical evidence reasonably and consistent with the requirements of the regulations, and explained why he weighed the evidence as he did in determining Plaintiff's RFC. The ALJ's RFC finding is supported by substantial evidence. The Court will not remand the ALJ's decision on this basis.

Additionally, tangential to Plaintiff's RFC argument, the Court must note the following

11

concerning the jobs available to Plaintiff given her RFC. As mentioned, the ALJ determined Plaintiff could perform her past relevant work as an import/export agent. (R. 37.) However, as the Commissioner points out, it appears that, at the administrative hearing, when the ALJ added the limitation to only occasional interaction with coworkers, supervisors and coworkers (as the ALJ later found in the RFC), the VE responded that such past work would be eliminated. (Dkt. 18, p. 16, fn. 1; R. 89.) Because Plaintiff has not raised this issue on appeal, the Court considers it waived. *See*, *e.g.*, *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). Nonetheless, any error in the ALJ's finding that Plaintiff could perform her past relevant work is harmless because of the ALJ's alternate finding that Plaintiff could perform a significant number of jobs in the national economy. (R. 37-39.) It would make no sense for the Court to remand this decision for the ALJ to remove import/export agent from the list of jobs Plaintiff could perform and clarify that those positions included bench packager, inspector, and sorter, as testified to by the VE. (R. 89 90.) *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) ("we will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same").

    c.    **The ALJ Appropriately Considered Plaintiff's Subjective Complaints**

In the last broad category of Plaintiff's complaints, Plaintiff alleges the ALJ erred in evaluating her subjective complaints.

In assessing a claimant's symptoms, the regulations direct an ALJ to "consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); SSR 16-3p. An ALJ's assessment of a plaintiff's subjective statements of symptoms need not be flawless and is entitled to deference unless it is "patently wrong," which is a "high burden." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Turner v. Astrue*, 390 F. App'x 581, 587 (7th Cir. 2010). Only when an ALJ's assessment lacks *any* explanation or support will a court declare it to be 'patently wrong.' *Elder v. Astrue*, 529 F.3d 408,

12

413-14 (7th Cir. 2008). While the ALJ must connect his analysis to the evidence, the Seventh Circuit has recognized that this is a "lax standard," *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008), imposing only a "minimal duty" on the ALJ. *Schreiber v. Colvin*, 519 F. App'x. 951, 961 (7th Cir. 2013). For that reason, "[n]ot all of the ALJ's reasons must be valid as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x. 717, 722–23 (7th Cir. 2009). The Agency's own rules explicitly state that an ALJ need discuss only those regulatory factors he finds pertinent to the case before him. SSR 16-3p. Moreover, an ALJ need not specify which of plaintiff's statements are or are not reliable. *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012).

After discussing the record medical evidence, the ALJ explained that there was no evidence in the treatment records to support the degree of sitting, standing/walking, and lifting/carrying limitations Plaintiff alleged. (R. 35.) The ALJ elaborated that, most notably, there was no evidence suggesting Plaintiff had been largely restricted to bed at times or would need to lie down for extended periods after sitting or standing/walking for even brief periods. *Id*. The ALJ noted that after Plaintiff's most recent surgery in July 2020, she reported to her care provider that her pain was better and that the pain on her side was completely gone. *Id*. (citing R. 1170.) Plaintiff attempts to refute the ALJ's statement that there was no evidence of Plaintiff's restrictions by citing to Dr. Olorvida's opinion. (Dkt. 17. At p. 17.) However, as discussed above, the ALJ reasonably found that Dr. Olorvida's opinion had little persuasive value. As such, Dr. Olorvida's opinion does not provide support for Plaintiff's allegations about her limitations in this regard.

The ALJ also discussed Plaintiff's allegations of mental limitations and acknowledged that she reported stress from her health issues, caring for an autistic child, and being a refugee from the Bosnian war. (R. 35.) The ALJ recognized the record indicated Plaintiff had seen a therapist in the past, and that Plaintiff testified she last saw a therapist two-to-three years ago. *Id*. The ALJ noted Plaintiff received medication management once every one-to-two months, with medication

13

adjustments that kept her mental condition relatively stable. *Id*. The ALJ also noted that Plaintiff's mental status examinations were all intact. *Id*. Thus, the ALJ reasonably concluded there was no evidence in the treatment records supporting the extent of mental symptoms and limitations Plaintiff described in her testimony, including problems with focus and stress, that prevented her from being able to work. *Id*.

Plaintiff disputes the ALJ's conclusion, citing some evidence she believes supports her claim of disabling mental symptoms. (Dkt. 17, pp. 17-18.) However, as the Court discussed above, Dr. Elkun's opinion was not before the ALJ. Further, while Plaintiff disagrees with the ALJ's reasoning, this is simply a contention she would have weighed the evidence differently. However, the Court will not reweigh the evidence or substitute its judgment for that of the ALJ. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *see also*, *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002) ("resolution of competing arguments based on the record is for the ALJ, not the court").

The Court finds the ALJ reasonably considered the evidence of record and found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. The ALJ explained that, in limiting Plaintiff to sedentary work with additional postural limitations, he accounted for Plaintiff's pain and other issues to the extent the evidence supported them. (R. 35.) He discussed how no greater exertional or postural limitations were warranted given that Plaintiff's Crohn's disease had been inactive, and that Plaintiff's own reported activities included that she was walking 30,000 steps per day and that she had gone on camping trips and traveled to Europe during the adjudicated period. (R. 35, 695.) The ALJ elaborated that he also provided additional precautionary limitations that Plaintiff avoid concentrated exposure to workplace hazards in consideration of her symptoms and any medication side effects. (R. 35.) Additionally, because the record reflected some reports of anger and irritability, the ALJ limited Plaintiff to occasional interaction with coworkers, supervisors, and the

general public. *Id*. The ALJ elaborated that he further limited Plaintiff to no fast-paced production rate or strict quota requirements in order to help reduce Plaintiff's stress and pain. *Id*. The ALJ later summarized that he found Plaintiff had the RFC for a range of sedentary work because it was supported by the objective medical findings including the physical and mental status exams and diagnostic testing showing Plaintiff's Crohn's disease to be inactive and her mental symptoms to be stable and controlled with medications, as well as Plaintiff's reports of physical activities to her doctors that suggested greater functional abilities than she generally tried to portray throughout the processing of her disability claim. (R. 37.)

In sum, the ALJ provided specific reasons supported by substantial evidence for concluding that Plaintiff's assertions about the severity of her symptoms and limitations were not reliable. The Court will not remand the ALJ's decision on this basis.

## IV. CONCLUSION

For the reasons detailed above, the Court finds the ALJ's decision to be supported by substantial evidence. The Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment (dkt. 17) is DENIED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED: November 8, 2022**

Susan E. Cox,
United States Magistrate Judge